DETERMINED IN THE

# THIRD DEPARTMENT,

AT

# GENERAL TERM,

## July, 1887.

---

IN THE MATTER OF THE PETITION OF JOHN PENNIE TO VACATE AN ASSESSMENT, ETC.

IN THE MATTER OF THE PETITION OF MATTHEW COLLING TO VACATE AN ASSESSMENT, ETC.

IN THE MATTER OF THE PETITION OF ELISHA P. HURLBUT TO VACATE AN ASSESSMENT, ETC.

*Assessments — what errors can be reviewed under section 2 of title 11 (chap. 298 of 1883) of the charter of Albany — meaning of words "substantial error" and "party aggrieved" as therein used — the requirement as to the notice of the meeting at which bids are to be received as prescribed by section 8 of title 9 of the charter — a grantee taking subject to an assessment is not bound to pay an illegal assessment.*

This proceeding was instituted, under the provisions of section 2 of title 11 of the charter of the city of Albany (chap. 298 of 1883), to vacate an assessment for the excavating. paving, etc., of Second avenue, in said city, upon the ground that the notice of the meeting of the board of contract and appor. tionment to receive bids for the work had not been given as prescribed by section 8 of title 9 of the said charter.

*Held*, that a claim by the defendant that the error, if committed, was not committed in a proceeding relative to the assessment, or in a proceeding to collect the same, within the meaning of those terms, as used in said section 2 of title 11 of the charter, could not be maintained.

The words "substantial error," as used in the said section, must be construed to embrace everything which might otherwise be remedied by a suit, action or special proceeding, the right to resort to which is taken away by section 3 of the said act.

Section 8 of title 9 of the charter requires that bids shall be received at a meeting of the board of contract and apportionment, held "at a time of which at least one week's notice * * * shall have been given in the official papers by five consecutive publications, Sunday and legal holidays excepted, of such notice therein." The publication in this case was from May fifteenth to May nineteenth, inclusive, of a notice of a meeting to be held on May twenty-first.

*Held,* that it was insufficient

That the requirement that such notice should be given was mandatory, and that a failure to comply therewith rendered the assessment void.

The petitioner purchased the property upon which the assessment was imposed while the work was in progress by a deed which recited, in substance, that it was subject to whatever assessment should be made.

*Held,* that the petitioner was a "party aggrieved" by the assessment, within the meaning of that term as used in said section 2 of title 11, and that he was not estopped from disputing the validity of the assessment, by the clause in his deed, as he did not assume to pay an illegal assessment

APPEAL from an order made at Special Term and entered in Albany county vacating an assessment made in this proceeding, instituted under section 2 of title 11 of the charter of the city of Albany (chap. 298 of 1883).

*D. Cady Herrick,* for the city, appellant.

*Alden Chester* and *G. De W. Hurlbut,* for the petitioners, respondent

LEARNED, P. J. :

This is an appeal from an order of the Special Term vacating, as to the petitioner, an assessment for the excavating, etc., of Second avenue. This proceeding was taken by the petitioner under section 2 of title 11 of the Albany charter, chapter 298, Laws of 1883. The alleged error for which the assessment was vacated is a failure to give the notice required by section 8, title 9, of the meeting of the board of contract and apportionment to receive bids for the work. And the first point made by the city is, that this (if an error) is not in a proceeding relative to an assessment or in a proceeding to collect the same, and, therefore, that the provisions of section 2, title 11, are not applicable. The counsel for the

city cites as authority on this point the case of *Matter of Cruger* (84 N. Y., 619). In that case an assessment had been made under an act of 1858. By a previous act of 1852 it was directed that an estimate of damages by change of grade should be made and included in the expense of the assessment. This had not been done. The court held that the petitioner was not aggrieved by the assessment; that his right to damages for change of grade was not affected by it; that there was no fault in the assessment, except that a possible item of expense had been omitted, which, if inserted, would have increased his assessment; that he had his remedy by *mandamus*. (*People ex rel. Myers* v. *B'rd of Ass'rs*, 53 How., 280.) The present case is quite different. If the petition is correct, the failure to advertise for the proper time affects the validity of the assess ment, and is, therefore, in a proceeding relative to the assessment. In *Strusburgh* v. *The Mayor* (87 N. Y., 452), is a statement of the remedies which may be had by action in respect to assessments. In *Bruecher* v. *Port Chester* (101 N. Y., 240), it was held that, where an assessment was utterly void for want of jurisdiction, one who had paid might sue and recover back his money. In *Jex* v. *Mayor* (103 N. Y., 536), where a want of jurisdiction was shown, it was held that one who had paid under coercion might recover his money back without vacating the assessment, or, if necessary, the assess ment might be vacated in that action. Now, in that case, it was urged by the defendant that chapter 312, Laws of 1874, made the summary remedy (similar to that in the present case) exclusive. The court held that that remedy applied only where there was an existing lien; and not when the lien had been removed by payment. (*In re Lima*, 77 N. Y., 170.)

It would seem, then, from these decisions, that where an assess ment is void for matters not appearing in the proceedings, the party assessed may permit his property to be sold and may defend in an action of ejectment or he may pay and then recover back the money.

Further, in the Jex case the court considered a statute similar to the present, which the defendants there urged was the exclusive remedy. Now it would have been a short reply to this position to say (as the defendant here says), that the statute did not apply to such defects as are now under consideration, but only to defects in the assessment; to say, in other words, that the alleged defect

(a want of sufficient signers to the petition), was not in a proceeding relative to the assessment. But the court did not take that view. They held that the statutory remedy did not apply, because the assessors had been paid, and hence there was no longer a lien. (*In re Hughes*, 93 N. Y., 513.) Thus the court implied that, if the assessment had not been paid, the statutory remedy would have been applicable and exclusive. And they said that the act "provided an easy and expeditious remedy for the vacation of an illegal or irregular assessment." The law there under consideration was chapter 312 Laws of 1874, amending chapter 338 Laws of 1858; and the language, as quoted in the opinion, is substantially that of the Albany charter. When we consider that these remarks were made in a case where the alleged error was a want of sufficient signers to the original petition, we see that the court did not limit the statutory remedy to errors in the assessment itself.

When section 3 of title 9 of the Albany charter takes away all suits or actions to vacate assessments or to remove a cloud on title arising from assessments, it evidently indicates that the proceeding under section 2 is sufficiently extensive to do all which might otherwise be done by suit or action. And certainly a suit or action might, but for this provision, reach such an error as is alleged in this case. Further, it is provided that "proceedings to reduce or vacate" shall be confined to the proceedings mentioned in this title. So that the remedy here provided is a substitute for "proceedings" as well as for suits and actions. "Substantial error," therefore mentioned in section 2, must be construed to embrace everything which might otherwise be remedied by suit, action or proceeding. The manner in which this remedy may be carried out in detail is shown in section 1 of the same title. We do not think that the case of *Matter of Fulton Street* (29 How., 429) can have any weight against the language used by the Court of Appeals in the Jex case above cited and against the decisions. (*In Matter of Emigrant Ind. Savings Bank*, 75 N. Y., 388; *In Matter of Manhattan Savings Inst.*, 82 id., 142; *In Matter of Lange*, 85 id., 307.) We are, therefore, of the opinion that if substantial error existed in the respect claimed, the present is a proper mode of remedy. For the purpose of receiving bids the statute requires one week's notice by five successive publications. (Section 8, title 9.) The pub-

lication was from May fifteenth to May nineteenth, inclusive. The time for receiving bids May twenty-first. That was held insufficient in the *Electric Light Case* (decided by Justice PECK-HAM in November, 1885). The same principle was held *In the Matter of Carlton St.* (16 Hun, 497). That case was affirmed (78 N. Y., 362), but the point in question does not seem to be passed upon. We see no reason to disagree with these views. The question then is, whether the giving of such notice is mandatory. *The Douglas Case* (46 N. Y., 44); *Astor Case* (50 id., 363); *Smith Case* (52 id., 526); and *Phillip's Case* (60 id., 16), tend to sustain this view. It may be urged, however, that these cases refer to advertisements prior to the law for the improvement, and, therefore, are not analogies to an advertisement only for bids for the contract. But in the *Manhattan Savings Institution Case* (*ut supra*), it was held that the fixing a price for rock excavation withdrew it from competition and hence made the assessment void. So, also, in the *Mahan Case* (81 N. Y., 621); and *Manhattan R. R. Case* (102 N. Y., 301), the failure by commissioners to take a proper oath was held to be a fatal defect. (*Merritt* v. *Port Chester*, 71 N. Y., 309.) See, however, another view on this point in *Matter of Kendall* (85 N. Y., 302).

Of course, if the city can dispense with the exact notice required by the statute, they can give no notice at all. To hold that a contract could be made without notice would be to take away a safeguard deemed necessary by the legislature. We think the petitioner is a party aggrieved. It is impossible for him to show how many persons would have presented bids, if the proper notice had been given. And, if the assessment is illegal, he is aggrieved because it is an apparent burden upon his land. The petitioner took his deed while the work was in progress and the deed recites, in substance, that it is subject to whatever assessment shall be made, the payment of which is the principal consideration. It is claimed by the city that this estops the petitioner. We think not. (*Matter of Gantz*, 85 N. Y., 536.) He did not assume to pay an illegal assessment. The agreement in the deed was probably intended to protect the grantor against any claim of the grantee by reason of the assessment. If the assessment was illegal, it was no claim against grantor or grantee. It is further claimed that the petitioner saw the work

go on and made no objection.   But he was not informed, by seeing
the work go on, that the board of contract and apportionment had
not given the lawful notice for receiving bids.   We may notice that
the order appealed from enjoins the city from attempting to enforce
the collection.   This is not objected to.   But we may remark that
we see nothing in the statute authorizing an injunction.

The order should be affirmed, with costs.   These views also dis-
pose of the case of Colling and the case of Hurlbut to vacate the
same assessment.

Similar order in each case.

LANDON, J., concurred; BOCKES, J., in doubt.

Orders affirmed, with costs.