ATTORNEYS FOR APPELLANT
James Dimos
Kandi K. Hidde
Maggie L. Smith
Jennifer A. Rulon
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE SOUTH BEND
TRIBUNE AND HOOSIER STATE PRESS ASSOCIATION
FOUNDATION
John P. Twohy
Kevin T. McNamara
Eichhorn & Eichhorn LLP
Hammond, Indiana

ATTORNEYS FOR AMICUS CURIAE STATE OF INDIANA
Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Heather H. McVeigh
Lara K. Langeneckert
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Damon R. Leichty
Barnes & Thornburg LLP
South Bend, Indiana

Peter J. Rusthoven
John R. Maley
Barnes & Thornburg LLP
Indianapolis, Indiana

Georgina D. Jenkins
Naperville, Illinois

ATTORNEY FOR AMICUS CURIAE INDEPENDENT
COLLEGES OF INDIANA
Seth M. Lahn
Bloomington, Indiana

FILED
Nov 16 2016, 1:45 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 71S05-1606-MI-359

ESPN, INC. AND PAULA LAVIGNE,

*Appellants (Plaintiffs below),*

v.

UNIVERSITY OF NOTRE DAME POLICE
DEPARTMENT,

*Appellee (Defendant below).*

Appeal from the St. Joseph Superior Court, No. 71D07-1501-MI-17
The Honorable Steven L. Hostetler, Judge

**November 16, 2016**

**Massa, Justice.**

An ESPN reporter requested information from the Notre Dame Security Police Department regarding 275 student-athletes. The Department declined, claiming that Notre Dame is a private university and its police force is not a "law enforcement agency" subject to Indiana's Access to Public Records Act. The trial court agreed, and dismissed ESPN's suit. We too find that a private university police department is not a "public agency" for the purposes of APRA, and affirm the trial court.

## Facts and Procedural History

The Notre Dame Security Police Department was established in 1977 by Resolution of the University of Notre Dame trustees. Through the University trustees, the Department is granted "[g]eneral police powers." Ind. Code §§ 21-17-5-4(a)(1), (b) (2014). But beyond these traditional police functions, the Department also enforces the University student code and parietals,[1] coordinates internal disciplinary reviews, and implements safety educational programs. The Department also acts in a caretaker role by escorting students home late at night, providing transportation services to students with private or sensitive needs, and registering personal property and bicycles.

---

[1] Parietals are "the regulations governing the visiting privileges of members of the opposite sex in campus dormitories." *Merriam-Webster's Collegiate Dictionary* 901 (11th ed. 2003).

In 2014, Paula Lavigne, an investigative reporter with ESPN, requested incident reports from the Department involving 275 student-athletes, whether named as a victim, suspect, witness, or reporting party. The Department denied Lavigne's request, relying upon three previous Public Access Counselor advisory opinions that concluded private university police departments are not "law enforcement agencies" under Indiana's Access to Public Records Act, Indiana Code chapter 5-14-3 (Supp. 2014).

ESPN then filed a Formal Complaint with the Public Access Counselor, alleging that the Department had violated APRA when it refused to provide its records. This Counselor took a different course than his predecessors, reasoning that the Department was acting under the color of law by enforcing the Indiana criminal code, and thus would be considered a "public law enforcement agency" for all future public access requests. Appellant's App. at 22–25.

Thereafter, ESPN renewed its incident report request, and again, the Department denied it. With more specificity than before, ESPN made a third request to the Department seeking daily logs,[2] which the Department denied. ESPN then filed a second Formal Complaint with the Counselor, who concluded that the Department's daily logs must be released and incident reports may be released, although the Department may withhold any investigatory records under Indiana Code section 5-14-3-4(b)(1).

ESPN then filed suit against the Department, alleging it had violated APRA. The Department moved for judgment on the pleadings under Indiana Trial Rule 12(C), contending it was not a "law enforcement agency" under Indiana Code section 5-14-3-2(n)(6), nor was it a "public agency" under any of APRA's other definitions. Further, the Department argued that the legislature had acquiesced to the three earlier Counselor opinions that determined private

---

[2] Under Indiana Code section 5-14-3-5, public agencies are required to keep daily logs of certain information relating to arrests, summonses, jailing, lock-ups, suspected crimes, accidents, and complaints.

university police were not public agencies under APRA. ESPN cross-moved for judgment on the pleadings in *its* favor, asserting that the Department was a "public agency" because it exercised executive power of the State under Indiana Code section 5-14-3-2(n)(1).

After a hearing, the trial court granted the Department's motion. It found that the Department was not a "law enforcement agency" under subsection 2(n)(6) because it was not "an agency or a department of any level of government," nor was the Department a "public agency" under subsection 2(n)(1) because it exercised power of the trustees, not power of the State. Appellant's App. at 10–11. As to legislative acquiescence, the trial court found the point "well taken," noting that three different Counselors issued three separate opinions between 2003 and 2011 that determined "private colleges who appoint campus police officers are not public agencies under APRA." Appellant's App. at 13.

ESPN appealed, arguing that the Department fits three statutory definitions of a "public agency": (1) it is a "law enforcement agency" under subsection 2(n)(6); (2) it exercises the executive powers of the state under subsection 2(n)(1); and (3) it exercises delegated "traditional" governmental power under subsection (2)(n)(2)(C).[3] Our Court of Appeals reversed and remanded, holding that the Department is a "law enforcement agency" under subsection (2)(n)(6), and finding that issue dispositive, declined to reach the remaining arguments. ESPN, Inc. v. Univ. of Notre Dame Sec. Police Dep't, 50 N.E.3d 385, 393 (Ind. Ct. App. 2016). The panel reasoned that the Department "fits within the definition because it was acting as a governmental entity by exercising a governmental function." Id. at 395. It declined to apply the doctrine of legislative acquiescence, finding that the Counselor's opinions were not sufficiently "long-standing in

---

[3] We acknowledge the amicus briefs filed in support of ESPN by the State of Indiana, and South Bend Tribune and Hoosier State Press Association Foundation jointly, and the brief filed in support of the Department by the Independent Colleges of Indiana.

nature." Id. at 400.  The Court of Appeals then remanded the matter to the trial court to determine which records the Department would have to produce.  Id.

We granted the Department's petition to transfer, thereby vacating the Court of Appeals opinion.  ESPN, Inc. v. Univ. of Notre Dame Sec. Police Dep't., 54 N.E.3d 371 (Ind. 2016) (table); Ind. Appellate Rule 58(A).

## Standard of Review

The parties have filed cross-motions for judgment on the pleadings.  Judgment on the pleadings is available to "any party" where it is clear from the face of the pleadings that one party is entitled to prevail as a matter of law.  Trial Rule 12(C); cf. Woodruff v. Indiana Family and Soc. Services Admin., 964 N.E.2d 784, 789 (Ind. 2012).  We review the trial court's ruling on such a motion *de novo*.  Murray v. City of Lawrenceburg, 925 N.E.2d 728, 731 (Ind. 2010).  Our review is confined to the pleadings, accepting well-pleaded material facts in the complaint as true.  Brownsburg Cmty. Sch. Corp. v. Natare Corp., 824 N.E.2d 336, 337 n.1 (Ind. 2005).

Further, the meaning of "public agency" under APRA is a question of statutory interpretation.  The meaning of a statute is a question of law and is subject to *de novo* review.  Adams v. State, 960 N.E.2d 793, 797 (Ind. 2012).

## The Notre Dame Security Police Department is Not a "Public Agency" Subject to Indiana's Access to Public Records Act.

ESPN argues that three subsections defining "public agency" subject the Department to APRA.  Conversely, the Department contends that none of the identified subsections include—or were meant to include—private university police.

Our first task when interpreting a statute is to give its words their plain meaning and consider the structure of the statute as a whole. West v. Office of Indiana Sec'y of State, 54 N.E.3d 349, 353 (Ind. 2016). We "avoid interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results." Id. at 355 (internal quotation omitted). As we interpret the statute, we are mindful of both "what it 'does say' and what it 'does not say.'" Day v. State, 57 N.E.3d 809, 812 (Ind. 2016) (quoting State v. Dugan, 793 N.E.2d 1034, 1036 (Ind. 2003)). To the extent there is an ambiguity, we determine and give effect to the intent of the legislature as best it can be ascertained. Moryl v. Ransone, 4 N.E.3d 1133, 1137 (Ind. 2014). "[W]e do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." Anderson v. Gaudin, 42 N.E.3d 82, 85 (Ind. 2015) (internal quotation omitted).

APRA was enacted with the express purpose that "all persons are entitled to full and complete information regarding the affairs of *government* and the official acts of those who represent them as *public officials* and *employees*." Ind. Code § 5-14-3-1 (emphasis added). The legislature has explicitly indicated APRA is to be "liberally construed," with the burden for nondisclosure on the "public agency" denying access. Id. The trial court correctly concluded, however, that this directive applies in determining *what records* are subject to disclosure, not *who* is covered by APRA. See Ind. Code § 5-14-3-1 ("[I]t is the public policy of the state that all persons are entitled to *full and complete information* regarding the affairs of government and the official acts of those who represent them as public officials and employees. . . . [APRA] shall be liberally construed to implement this policy.") (emphasis added); see also Evansville Courier & Press v. Vanderburgh Cty. Health Dept., 17 N.E.3d 922, 928 (Ind. 2014) ("APRA is intended to ensure Hoosiers have broad access to most government records.").

We endeavor to read APRA in a manner consistent with this statutory directive. See Shepherd Properties Co. v. Int'l Union of Painters & Allied Trades, Dist. Council 91, 972 N.E.2d 845, 852 (Ind. 2012) ("We presume that the legislature intended the language used in the statute to be applied logically and consistently with the APRA's underlying policy and goals."). But,

first, we must determine whether the Department *is* a "public agency" as defined by Indiana Code section 5-14-3-2(n).  Thus, we turn to the three definitional subsections at issue.

### A.  The Department is Not a "Law Enforcement Agency" Under Subsection 2(n)(6).

Under APRA, "law enforcement agency" is defined as:

> An agency or a department of *any level of government* that engages in the investigation, apprehension, arrest, or prosecution of alleged criminal offenders, *such as* the state police department, the police or sheriff's department of a political subdivision, prosecuting attorneys, members of the excise police division of the alcohol and tobacco commission, conservation officers of the department of natural resources, gaming agents of the Indiana gaming commission, gaming control officers of the Indiana gaming commission, and the security division of the state lottery commission.

Ind. Code. § 5-14-3-2(n)(6) (emphasis added).  ESPN argues the Department is a "law enforcement agency" under APRA subsection 2(n)(6) because it engages in government functions, specifically exercising police powers.  The Department contends it is not "of any level of government," as the plain meaning of APRA requires.[4]

---

[4] The Department also cites the doctrine of legislative acquiescence to support its argument that it is not subject to APRA.  Between 2003 and 2011, the Counselor concluded in three separate opinions that private university police departments were not public agencies under APRA (2003, Taylor University Office of Campus Safety; 2009, Valparaiso University Police Department; 2011, Notre Dame Security Police Department).  The Department claims that, because the legislature has not acted to supersede these opinions, despite amending APRA in some manner nearly every session, this Court should accept that interpretation.  ESPN, however, contends that the Counselor's opinions are insufficient to invoke reliance because they are merely advisory and non-binding.  Although the Counselor's opinions are non-binding, we note that they serve a vital government service.  Our legislature established the Counselor to provide advice and interpretations regarding Indiana's public access laws, including APRA, and has vested the Counselor with the specific power "to issue advisory opinions."  Ind. Code §§ 5-14-4-5, -10(6) (2010).  We find the Department's argument reasonable that the legislature is acutely aware of the advisory opinions issued from

We agree that in order for the Department to be subject to APRA, a plain reading of subsection 2(n)(6) dictates that it must be "of any level of government" and it must engage in the law-enforcement functions identified ("investigation, apprehension, arrest, or prosecution of alleged criminal offenders"). Ind. Code § 5-14-3-2(n)(6). It is not disputed that the Department engages in the functions identified in subsection 2(n)(6). Thus, we turn to whether the Department is "of any level of government."

Private educational institutions have been granted statutory authority to appoint police officers to protect their campuses. Ind. Code § 21-17-5-2. These police officers are vested with general police powers, including the power to arrest. Ind. Code § 21-17-5-4(a)(1). However, they are also uniquely entrusted to enforce the rules and regulations of their appointing educational institution. Ind. Code § 21-17-5-4(a)(3). The "governing board of an educational institution . . . . may forbid the officer[s] from exercising any powers otherwise granted to [] police officer[s] by law." Ind. Code § 21-17-5-4(b). They may also extend the officers' jurisdiction beyond campus to any part of the state, but campus police's presence is never to the exclusion of other government authority. Ind. Code § 21-17-5-5(c); see Ind. Code § 21-17-5-4(a)(4) (noting that such officers' duties include "assist[ing] and cooperat[ing] with other law enforcement agencies and law enforcement officers"). Appointed officers take an oath "in the form and manner prescribed by the appointing governing board" and serve at its pleasure. Ind. Code § 21-17-5-3. The Department thus acts under the control of the trustees, who may expand and constrict its power at will, and free from government interference. We therefore cannot find that the Department meets the plain language of APRA's statutory directive, that the law enforcement agency be "of any level of government." It is an "agency or department" of the University, not of the State of Indiana.

---

an office it created. However, because we find in favor of the Department, we need not dwell on the legislature's silence with respect to those opinions in this instance.

ESPN directs us to precedent from other states, in support of its argument that "the statute itself is drafted to make the *functions* performed by a law enforcement agency dispositive." Appellant's Resp. to Pet. to Trans. at 9–13 (emphasis in original) (citing State ex rel. Schiffbauer v. Banaszak, 33 N.E.3d 52 (Ohio 2015)). However, Ohio's statute and ours have different language, requiring different analyses. Campus police departments subject to Ohio's public access laws are determined by whether they "exercise [] any function of government." Ohio Rev. Code Ann. § 149.011(A). There is no evidence that our General Assembly intended a functional equivalency analysis, like that of Ohio's, and we decline to read this language into the statute on the legislature's behalf. N.D.F. v. State, 775 N.E.2d 1085, 1088 (Ind. 2002) ("[W]e will not read into the statute that which is not the expressed intent of the legislature.")

ESPN also argues APRA's use of the phrase "such as" indicates that the list following it is illustrative only, not exhaustive. We agree with this general statement regarding intent. See Brownsburg Area Patrons Affecting Change v. Baldwin, 714 N.E.2d 135, 139 n.5 (Ind. 1999) ("The Court's use of 'such as' suggests that it did not intend for this to be an exhaustive list."). However, the list is not boundless. "The meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases."[5] 600 Land, Inc. v. Metropolitan Bd. of Zoning Appeals of Marion Cty., 889 N.E.2d 305, 311 (Ind. 2008) (internal quotation omitted). Here, the listed examples help give meaning to "law enforcement agency," in that a common element among them is that they are *all* governmental entities or political subdivisions, not private ones. Thus, the list illustrates the specific types of entities that fall under "law enforcement agency" are those that are governmental or of a political subdivision. Indeed, this subsection of APRA has been amended since the Counselor's first opinion in 2003, without adding private university police departments, but adding additional governmental entities.[6] The

---

[5] This canon of statutory construction is known by the Latin term, *noscitur a soiis*, meaning "it is known by its associates." *Black's Law Dictionary* 1224 (10th ed. 2014).
[6] Our General Assembly added "gaming agents of the Indiana gaming commission" in 2005 and "gaming control officers of the Indiana gaming commission" in 2007. 2005 Ind. Acts 2431–34; 2007 Ind. Acts 4126–29.

mere fact that the trustees have appointed police officers to protect its campus and who perform some of the same activities as the listed entities does not make the Department itself a governmental entity subject to APRA.

The plain and unambiguous language of APRA supports our finding that the Department is not a "law enforcement agency" because it is not "of any level of government." We cannot agree that the Department becomes subject to APRA merely because it has exercised its power to appoint police officers to protect its campus.

## B. The Department Does Not Exercise Executive Power or Delegated Power Under Subsections 2(n)(1) or 2(n)(2)(C).

Alternatively, ESPN argues that the Department is a "public agency" under APRA subsections 2(n)(1) and 2(n)(2)(C) because it exercises executive power, specifically police powers. Subsection (1) provides in relevant part that a "public agency" includes "any . . . department, division, . . . agency, office, . . . by whatever name designated, exercising any part of the executive, . . . power of the state." Ind. Code § 5-14-3-2(n)(1). Under Subsection (2)(C) a "public agency" includes "any . . . other entity, or any office thereof, by whatever name designated, exercising in a limited geographical area the executive . . . power of the state." Ind. Code § 5-14-3-2(n)(2)(C). In response, the Department maintains its power is not the executive's, but power granted to the trustees.

The Department exists by creation of, and serves at the pleasure of, the trustees. Ind. Code §§ 21-17-5-2, -3. It is the trustees who "prescribe the duties of the police officers," "direct[] their conduct," and even require the officers to wear "distinctive uniforms." Ind. Code §§ 21-17-5-2(2), -2(3). All this is accomplished by the legislature's grant of power *to the trustees*. See Ind. Code §§ 21-17-5-3, -4. The Department is not exercising the power of the State; rather, the trustees are exercising power granted to it by the State to appoint police officers to protect and oversee their campus. While the trustees permit these officers to perform some traditional police functions, they

are also tasked with many University-specific duties, for example, enforcing the student code, escorting students late at night, and acting as student caretakers. For the Department to be a "public agency," it must be exercising its functions pursuant to government control; mere interconnections between a public and private entity are insufficient. See Perry Cty. Dev. Corp. v. Kempf, 712 N.E.2d 1020, 102627 (Ind. Ct. App. 1999) (finding that working closely with a government entity and having similar goals as a governmental entity do not transform the private entity into a public agency). In other words, a grant of arrest powers enabling university police departments to keep order on their private campuses does not transform those officers or the trustees who oversee them into public officials and employees subject to APRA.

Moreover, when engaging in statutory interpretation, we "avoid an interpretation that renders any part of the statute meaningless or superfluous."[7] Hatcher v. State, 762 N.E.2d 189, 192 (Ind. Ct. App. 2002). To reach the conclusion that the Department is a "public agency" under either subsection 2(n)(1) or 2(n)(2)(C) would render other specifically enumerated subsections of APRA unnecessary and meaningless, since 2(n)(1) and 2(n)(2)(C) would have such broad, sweeping meanings. "If possible, every word must be given effect and meaning, and no part should be held to be meaningless if it can be reconciled with the rest . . . ." Siwinski v. Town of Ogden Dunes, 949 N.E.2d 825, 828 (Ind. 2011). There would be no reason for our General Assembly to include 2(n)(6) separately from 2(n)(1) and 2(n)(2)(C), except to have an independent effect, such that only law enforcement agencies that meet the statutory definition are subject to APRA.

Further, "specific statutory provisions take priority over general statutory provisions."[8] Wright v. State, 949 N.E.2d 411, 415 (Ind. Ct. App. 2011) (internal quotation omitted). "Law

---

[7] This is known as the surplusage canon, which holds "that, if possible, every word and every provision in a legal instrument is to be given effect." *Black's Law Dictionary* 1672 (10th ed. 2014).

[8] The general/specific canon is another doctrine of statutory construction known by the Latin term, *generalia specialibus non derogant*. *Black's Law Dictionary* 799 (10th ed. 2014). It holds that "if there is a conflict in a legal instrument between a general provision and a specific provision, the specific provision prevails." Id.

enforcement agency" under subsection 2(n)(6) is more specific than "exercising executive power" or "exercising in a limited geographical area executive power of the state" under subsections 2(n)(1) and 2(n)(2)(C), respectively, and thus takes priority. There is no reason for this Court to go beyond 2(n)(6) in order to capture the Department as a "public agency."

Finally, finding the Department is a "public agency" under the executive power subsections could also lead to at least two absurd results, which should be avoided. See Hatcher, 762 N.E.2d at 191 ("When construing the language of a statute, we do not presume that the legislature intended language used in the statute to be applied illogically or to bring about an unjust or absurd result."). First, the Department is not a separate entity from the University, but a department thereof. If the Department is a "public agency" under these subsections, then all of the records of the entire University are potentially subject to APRA's disclosure requirements, depending entirely on the University's internal decisions regarding how to manage and structure its departments. Second, public agencies under subsections 2(n)(1) or 2(n)(2) are required to disclose "investigatory records," which are expressly exempt for "law enforcement agencies." See Ind. Code § 5-14-3-2(o) (definition of "public record"); see also Ind. Code § 5-14-3-4(b)(1) (investigatory records of law enforcement agencies are exempt). Neither of these results could be what our General Assembly intended. We thus decline to find the Department a "public agency" under subsections 2(n)(1) and 2(n)(2)(C).

We acknowledge the importance of an open government, as well as the broad access granted to government records by APRA. See Ind. Code § 5-14-3-1. However, the job of this Court is to interpret, not legislate, the statutes before it. Under APRA as it is currently written, the Department is not a "public agency" under any of the three subsections identified.[9]

---

[9] The Department urges this Court to apply its decision prospectively because private universities have relied upon prior Counselor opinions in organizing their campus police departments. Thus, in order to

## Conclusion

Indiana's Access to Public Records Act "is intended to ensure Hoosiers have broad access to most *government* records." Evansville Courier & Press, 17 N.E.3d at 928 (emphasis added). The crux of this holding, however, is that an entity must first be a "public agency." Because we find the Department is not a "public agency" subject to APRA, we affirm the trial court.

Rush, C.J., and Rucker, David, and Slaughter, JJ., concur.

---

shield certain matters not proper for public scrutiny, private universities need time to reorganize. However, based on our decision that the Department is not subject to APRA, we need not reach this issue.